## IN THE COURT OF APPEALS OF IOWA

No. 15-0320
Filed May 6, 2015

**IN THE INTEREST OF S.J.H.,**
**Minor Child,**

**D.H., Father,**
        Appellant,

**B.M., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

The father and mother appeal the juvenile court's termination of their parental rights to their child, S.J.H.  **AFFIRMED ON BOTH APPEALS.**

Roberta J. Megel of the State Public Defender Office, Council Bluffs, for appellant father.

J. Joseph Narmi, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Matthew Wilbur, County Attorney, and Eric Strovers, Assistant County Attorney, for appellee State.

Marti Nerenstone, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

The father and mother appeal the juvenile court's termination of their parental rights to their daughter, S.J.H. Each maintains the State failed to prove by clear and convincing evidence grounds to terminate their separate parental rights under Iowa Code section 232.116(1)(b), (d), (e), (h), and (i) (2013). We conclude that, given the parents' unresolved drug abuse issues as well as their current and anticipated extended-term incarcerations, S.J.H. cannot be returned to either parent's care within the meaning of paragraph (h). Furthermore, given her young age and need for permanency, termination is in the child's best interest. Consequently, we affirm the order of the juvenile court terminating the mother's and father's parental rights.

**I. Factual and Procedural Background**

S.J.H., born October 2013, first came to the attention of the Iowa Department of Human Services (DHS) on February 18, 2014, upon the arrest of the mother and father for illegal drug possession. Upon entering the home, authorities discovered drugs—including methamphetamine and marijuana—as well as drug paraphernalia in the house; additionally, the mother had needles in her purse and admitted to intravenous drug use. S.J.H. was present in the home. Both the mother and father were taken into custody, and S.J.H. was placed in foster care, where she remained at the time of the termination hearing. Following a hair stat test, S.J.H. tested positive for amphetamines, methamphetamine, and cannabinoids.

The father, following his arrest, was incarcerated for thirty days then attended an inpatient substance abuse treatment program. On January 29,

2015, he was released to a three-quarters house, where he resided at the time of the termination hearing. He was also charged under federal law and faces prison time. It is unknown what the sentence will be, though he testified the possible sentence is thirty years to life. At the termination hearing, he conceded he could not care for S.J.H., but requested that she be placed with either his family or the mother of his other children.

The mother was also incarcerated following her arrest. Upon her release she attended an inpatient substance abuse program but left after one week, and resumed using methamphetamine. She was arrested again on September 15, 2014, for a probation violation due to her drug use and an escape charge, given she left the inpatient treatment program. At the time of the termination hearing, she stated she believed she would be incarcerated for eighteen months, though she faced a possible ten-year sentence. Furthermore, although the mother was accepted at several inpatient treatment facilities, she never remained for any significant length of time. She conceded that she has a substance abuse problem, but at the time of the termination hearing, stated she was ready to become sober. A DHS worker testified that, although she believes the mother genuinely intends to address her addiction, she suffers from a lack of support, which inhibits her ability to become sober as well as contributed to her previous relapses.

Both parents' contact with S.J.H. during the pendency of this proceeding was infrequent. Visits were offered three days each week, but the parents only attended a few when they were not incarcerated, and all were fully supervised. While in prison, the father requested visits be conducted over Skype; however,

that never occurred. The last full visit the mother had was on July 18, 2014, after which she only saw S.J.H. one more time in November, a few months before the termination hearing. The father last saw her at the end of May 2014. However, the DHS workers noted that, in the past, the parents shared a bond with S.J.H. and were able to properly care for her during supervised visits. Nonetheless, due to the parents' lack of any sort of consistent contact with S.J.H., the strength of the bond has deteriorated. The DHS workers further observed S.J.H. is bonded with her foster parents.

The State filed a petition to terminate parental rights on December 24, 2014. A contested hearing was held on February 5, 2015, in which both the mother and father appeared personally. On February 10, 2015, the juvenile court issued an order terminating both the father's and the mother's parental rights under Iowa Code section 232.116(1)(b), (d), (e), (h), and (i). The mother and father separately appeal.

## II. Standard of Review

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.*

## III. Termination of Parental Rights

To terminate parental rights under Iowa Code section 232.116(1)(h), the State must prove by clear and convincing evidence the child is three years old or

younger, has been adjudicated in need of assistance, has been removed from the parent's care for the last six consecutive months, and cannot be returned to the parent's custody within a reasonable period of time.

The record demonstrates the juvenile court properly terminated the mother's and father's parental rights under paragraph (h). As it noted in its order:

> Other than maintaining contact, which has been minimal at best, neither parent has otherwise complied with the case plan to resolve the problems which led to the removal of this child. [The father] only recently was able to start addressing his substance abuse issue. [The mother] has failed to address hers. When they were not incarcerated both parents failed miserably in complying with drug testing. Mental health issues have not been addressed by [the mother]. Both are incarcerated with no possibility of parenting this child now or in the foreseeable future. Visitation which has been exercised has never progressed beyond supervised visits. These parents have had ample time to address these issues and have failed to take advantage of this time.

We agree with this assessment. Neither parent has been successful in addressing the significant substance abuse issues, which have significantly impacted each's parenting ability. In determining the future actions of the parent, their past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The record also supports the conclusion S.J.H. cannot be returned to the parents' care within the meaning of paragraph (h). Both parents are incarcerated and will be for the foreseeable future, if not long into the future. Moreover, neither has a plan regarding sobriety, housing, or employment for when they are released, so they may take custody of S.J.H. Therefore, we agree with the juvenile court the State proved by clear and convincing evidence grounds to terminate both parents' rights under Iowa Code section 232.116(1)(h).

Furthermore, termination is in S.J.H.'s best interests. Though both parents were bonded with her, the bond has waned as the parents have only seen her a few times since her removal and only through supervised visits. We agree with the juvenile court's statement that "any bond which may exist between the child and her parents is outweighed by her need for permanency." This is in line with our position that: "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). Consequently, termination is in the child's best interest.

Finally, the father requests that his rights need not be terminated, as the child could be placed with a relative. *See* Iowa Code § 232.116(3)(c). However, as the district court noted, the record does not contain a home study that would support the relative-placement option, and, therefore, the consideration of this paragraph is inapplicable.

For these reasons, we affirm the juvenile court's termination of the mother's and father's parental rights to S.J.H.

**AFFIRMED ON BOTH APPEALS.**